IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          Case No. 20-10038-01-JWB

ROGER MOSS,

        Defendant.

**MEMORANDUM AND ORDER**

    This matter came before the court on October 18, 2021, for an evidentiary hearing (the "Hearing") on Defendant's motions to suppress.  (Docs. 51, 63, 64, 65.)[1]  The motions are fully briefed and ripe for review.  (Docs. 51, 63, 64, 65, 66, 69, 70, 71, 72, 73, 75, 76, 77, 78, 79.)  For the reasons stated herein, Defendant's motions to suppress (Docs. 51, 64, 65) are DENIED and (Doc. 63) is DENIED AS MOOT.

**I.     Background**

    Defendant Roger Moss was charged in a June 16, 2020, indictment with one count of possession with intent to distribute methamphetamine, 21 U.S.C. § 841(a)(1) and (b)(1)(A); one count of possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1) and (b)(1)(C); one count of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1) and (b)(1)(C); one count of possession of a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c); and one count of felon in possession of a firearm, 18 U.S.C. § 922(g)(1).  (Doc. 1.)  Pursuant to the indictment

---

[1] At the Hearing, Moss withdrew one of his motions to suppress (Doc. 66.)  However, the following day Moss filed a motion pro se arguing he now objects to the waiver.  (Doc. 82.)  The court notes Moss was present during the Hearing and consulted with his attorney before defense counsel informed the court that defendant was withdrawing the motion.  Accordingly, Moss' objection is overruled.

and arrest warrant, Moss was arrested on June 24, 2020.  (Doc. 4.)  On June 29, 2020, Moss was granted release pending trial.  (Doc. 10.)

## II.    Discussion

### A.    Motion to Quash First GPS Warrant (Doc. 64.)

Painting with broad strokes, Moss argues the affidavit supporting the first GPS warrant failed to establish probable cause and, further, that "the affidavit contains material falsehoods made either deliberately or with reckless disregard for the truth" creating a *Franks* issue.  (Doc. 64 at 1); *see also Franks v. Delaware*, 438 U.S. 154, 171-172 (1978).  In response, the government asserts "[t]he facts plainly set forth in the affidavit" provided a substantial basis for the state district judge's finding of probable cause, and Moss has failed to proffer any proof in support of his *Franks* hearing request.  (Doc. 71 at 10, 18.)  In reply, Moss provides an affidavit stating he has "never met any individual named Sonny Slocum" and that during his December 5, 2018 traffic stop he "never threw a large quantity of United States currency or narcotics . . ."[2]  (Doc. 77-1 at 2.)  Despite Moss' contentions, the court finds the state judge had a substantial basis for a finding of probable cause and that Moss fails to meet his burden warranting a *Franks* hearing.

### 1.    Probable Cause

The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

---

[2] Notably, Moss offers nothing in his affidavit to support a *Franks* hearing concerning: (1) any omissions of age discrepancies from Carol Robinson's identification of her dealers; (2) his allegation that Carol Robinson had a prior conviction for a crime of dishonesty; or (3) any address misinformation.  (Doc. 64 at 8.)  Accordingly, the court finds Moss has not met his burden under *Franks* and is not entitled to a hearing on those issues.  *See United States v. Moses*, 865 F.3d 1106, 1110 (10th Cir. 2020).

U.S. Const. amend. IV.  The validity of a warrant is not determined by "nit-picking" discrete portions of the application.  Rather, the test is whether, under the totality of the circumstances presented in the affidavit, the issuing judge had a "substantial basis" for determining that probable cause existed.  *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *United States v. Harris*, 369 F.3d 1157, 1165 (10th Cir. 2004) ("In determining whether a search warrant was supported by probable cause, we review 'the sufficiency of the affidavit upon which a warrant [wa]s issued by looking at the totality of the circumstances and simply ensuring 'that the [issuing] magistrate had a substantial basis for concluding that probable cause existed.'" (internal citation omitted)).  The court gives great deference to a search warrant that was reviewed and signed by a judge.  *See United States v. Leon*, 468 U.S. 897, 914 (1984).

Probable cause exists when "the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched." *Harris*, 369 F.3d at 1165 (quoting *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1330 (10th Cir. 2003)).  The Tenth Circuit has adopted the general rule that probable cause requires a "nexus between [the contraband to be seized] or suspected criminal activity and the place to be searched." *United States v. Rowland*, 145 F.3d 1194, 1203 (10th Cir. 1998) (quoting *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990)).

Here, the government's affidavit provided a "substantial basis" for the issuing judge's probable cause determination.  For starters, the affidavit notes that James Shaw[3] and Carol Robinson[4] were caught by police while engaging in drug-related criminal activity.  (Doc. 64-1 at 2-3.)  Following their arrests, both decided to give details surrounding their involvement in drug trafficking.  First, Shaw elaborated that he buys 1-3 ounces of cocaine on a weekly basis from a

---

[3] Apprehended on October 9, 2019.
[4] Apprehended on November 7, 2019.

black man named "Reggie."  Shaw further detailed that Reggie alternates between driving a black Ford Taurus and a black Chevrolet pickup truck when he delivers drugs—including crack cocaine, methamphetamine, marijuana, and narcotic pills.  Despite Shaw telling officers he would not assist with future investigations surrounding Reggie, he did allow officers to look through his phone and retrieve Reggie's phone number.  This information prompted the affiant officer to run a records check, which resulted in discovering that Moss reported using the phone number associated with Reggie.  Notably, officers soon thereafter discovered that Moss owns and operates both a black Ford Taurus and a black Chevrolet pickup truck.

Second, Robinson was interviewed, post Miranda, and stated she is addicted to crack cocaine and sells crack to pay for her drug addiction.  Robinson further detailed that she buys crack cocaine from two different black males between the ages of 30 and 40.  Robinson continued by stating one of her drug suppliers drives a black four door sedan.  While Robinson refused the officers' request to provide the sedan owner's name, she did state that he goes by a nickname.  At this point, one of the officers began listing common nick names such as Thomas, John, and Reggie.  Robinson then became quiet and appeared nervous before explaining to officers that she was worried they were going to arrest her drug supplier.  Robinson stated the police now knew his nickname and that he drives a black four door sedan.  Albeit a weaker inference, the affiant officer stated he believed Robinson was referring to Moss' alias of "Reggie" and his black four door Taurus.  However, more importantly, the affidavit detailed that the day before Robinson was apprehended a surveilling officer spotted Moss' black Taurus parked in front of Robinson's residence.  Additionally, the affiant officer employed the License Plate Reader system and discovered that on July 28, 2019, Moss' black Chevrolet truck was parked in the general area of Robinson's residence.

Next, the affiant officer conducted a records check and discovered that on December 5, 2018, Moss was stopped for a traffic violation in his black Taurus.  Once stopped, the officer requested Moss step out of the vehicle, at which point the officer stated that he saw Moss "throwing a large quantity of U.S. currency and clear baggie with several Hydrocodone pills, Lortab pills, and approximately 1 ounce of crack cocaine."  (Doc. 64-1 at 3.)  Following this, the officer searched Moss' vehicle and found approximately $2,461, a digital scale, and a handgun.  Equipped with this information, the affiant officer located Moss' apartment and conducted seven trash pulls from a communal dumpster.  All seven attempts to collect trash from Moss' apartment were unsuccessful.  Because of this, in combination with Moss' apartment having "an alley way effect making traditional surveillance techniques ineffective[,]" the affiant officer believed "a GPS tracker is the only effective means of surveilling [Moss] during illegal drug deals."  (*Id*. at 3-4.)

After reviewing the affidavit, the court finds the issuing judge had a substantial basis to conclude there was probable cause that Moss' Taurus was being used in drug trafficking activity. The affidavit focused on Moss' Taurus and tying it to the residences of both Shaw and Robinson. Shaw provided officers with specific information about both of Moss' vehicles and his phone number.  While less helpful, Robinson still provided specific enough information to create an inference that Moss might be her drug dealer.  Independently of Robinson, the affidavit noted two instances of Moss' vehicles being found at or near Robinson's residence, with one of those times being the day before her residence was searched.  Further, the affidavit illustrated by pointing to the December 5, 2018 traffic stop that Moss had prior involvement with narcotics and, it would appear, narcotics trafficking due to the fact that he had a digital scale and gun.  Accordingly, the court finds the issuing judge had a substantial basis for concluding that probable cause existed and upholds the issuance of the search warrant.

    2.    **_Franks_ Issue**

Pursuant to _Franks_, a Fourth Amendment violation occurs if "(1) an officer's affidavit supporting a search warrant application contains a reckless misstatement or omission that (2) is material because, but for it, the warrant could not have lawfully issued." _Moses_, 965 F.3d at 1110. Moss carries the burden to make a "'substantial preliminary showing' that both of these elements exist" before he is entitled to a hearing to prove any alleged _Franks_ violation. _Id._ (citing _Franks_, 438 U.S. at 155). This burden is not satisfied by "mere allegations of defects in a warrant[,]" rather, Moss must produce evidence such as "[a]ffidavits or sworn or otherwise reliable statements of witnesses." _Id._ (citing _Franks_, 438 U.S. at 171). Lastly, the court is "only required to make any inferences that would have been required when the warrant application was [first] considered." _Id._

Based upon Moss' affidavit (Doc. 77-1.) the court finds Moss has failed to make a substantial preliminary showing that there are reckless misstatements or omissions that are material because without them the warrant would not have issued. As noted above, Moss' only attempt at meeting his _Franks_ burden is an affidavit where he states that he does not know a person named Sonny Slocum and he never "threw" a large amount of currency during his December 5, 2018 traffic stop. Paragraph 2 of the search warrant application is the only place in the document where the name Sonny Slocum is used. Beyond that, the application makes no further mention of Slocum, nor does it contain any suggestion that Slocum is connected with the activities addressed in the application. Accordingly, the court concludes that the reference to Slocum was a mistake, likely caused by the affiant's failure to purge an existing electronic word processing document of a name used in a prior application. In any event, there is no support for an inference that the affiant officer was trying to or could have deceived the judge concerning probable cause by mentioning

Sonny Slocum.  Likewise, Moss' objection to the characterization that he was seen throwing a large quantity of U.S. currency and a clear baggie containing drugs during the December 5, 2018 traffic stop is immaterial.  It is undisputed that Moss had a large quantity of U.S. currency and that the baggie contained drugs.  That is the relevant part, not whether Moss threw the materials or dropped them, but rather that he possessed them.  Accordingly, Moss has failed to meet his burden warranting a *Franks* hearing.

### B.   Motion to Quash Second GPS Warrant (Doc. 51.)

Moss' next motion is entirely based upon a misguided technical argument.  Moss cites to K.S.A. 22-2502(a) and (b)(3) for his proposition that because the affiant officer obtained an "extension" of the first search warrant from a different state judge than the one who approved the first warrant, that fact renders the second warrant invalid.  (Doc. 51 at 3.)  Moss' technical argument is rooted in the language of K.S.A. 22-2502(a) and (b)(3), which references "the magistrate" in discussing the judge issuing a search warrant.  The government responds that "the Kansas statute does not specifically require that the same judge approve a second or subsequent search warrant for the same property [Moss' car]," which in turn means the second search warrant was not defective; and regardless, the second warrant was supported by probable cause allowing it to stand on its own.  (Doc. 69 at 1-2.)

It is undisputed that the warrant and ensuing search were state in character.  When a search is state in character, "the warrant and affidavits need only conform to federal constitutional requirements in order for the resulting evidence to be admissible in a federal prosecution."  *United States v. Gibbons*, 607 F.2d 1320, 1325 (10th Cir. 1979); *see also United States v. Sadlowski*, 948 F.3d 1200, 1204 (10th Cir. 2020).  Moreover, even if the warrant was federal in character, the court's analysis would not change because a "violation of state law . . . would not render the

evidence obtained inadmissible in federal courts." *On Lee v. United States*, 343 U.S. 747, 754-55 (1952). This sounds the death knell for Moss' motion as he has not challenged the probable cause finding from the issuing judge. Accordingly, Moss' motion is denied.

### C. Motion to Suppress Evidence from Seizure (Doc. 63.)

Initially, Moss argued the police illegally seized him approximately one hour before executing the search warrant on his apartment. During the Hearing, the government represented that it did not plan to use any evidence obtained during the seizure at trial. Specifically, the government agreed not to introduce Moss' cellphone, his statements claiming ownership of the phone, or his apartment key—the only evidence to which Moss objected.[5] Accordingly, the motion to suppress is rendered moot.

### D. Motion to Suppress Apartment Search (Doc. 65.)

Rounding out Moss' array of suppression motions, he attacks the validity of a warrant issued by a federal magistrate judge authorizing a search of his apartment for illegal drugs and related records, items, and contraband on the basis that it is unsupported by probable cause and tainted by falsehoods in violation of *Franks*. (Doc. 65.) On the contrary, the court finds the issuing magistrate had a sufficient basis for a finding of probable cause and that Moss wholly fails to meet his burden under *Franks*.[6] Moss largely rehashes his arguments about probable cause already discussed above in relation to his attack on the first GPS warrant, (Doc. 64); but he also adds that "the affidavit does not establish a nexus between any alleged [drug] activity" and his apartment. (Doc. 65 at 1-2.) In response, the government again rebuts Moss' probable cause arguments,

---

[5] Moss' attorney candidly agreed with the court that case law would not support the apartment key providing a sufficient link warranting suppression of what authorities found at Moss' apartment. Regardless, it bears mentioning that since the search warrant was valid, the fact that authorities used his key to enter the apartment, instead of breaking in, makes no difference.

[6] Because Moss makes no attempt to meet his burden under *Franks* the court declines to address the issue any further.

asserting: "contrary to [Moss'] statements, the affidavit contains significant information about [Moss'] residence and the connection to drug trafficking activity . . ."[7]  (Doc. 72 at 9.)

In addition to facts sufficient to support probable cause that a crime occurred, there must be a nexus between the suspected criminal activity and the place to be searched. *Rowland*, 145 F.3d at 1203.  The affidavit is not required to "draw an explicit connection between a suspect's activities and his residence for a Fourth Amendment nexus to exist." *United States v. Biglow*, 562 F.3d 1272, 1280 (10th Cir. 2009).  Ultimately, a judge may draw reasonable conclusions based on the affidavit and "practical considerations of everyday life." *Id.*  In *Biglow*, the Tenth Circuit identified a non-exhaustive list of factors relevant to the nexus determination, including: "(1) the type of crime at issue, (2) the extent of a suspect's opportunity for concealment, (3) the nature of the evidence sought, and (4) all reasonable inferences as to where a criminal would likely keep such evidence."  562 F.3d at 1279; *see also id.* (noting "[w]e have long recognized that magistrate judges may 'rely on the opinion' of law enforcement officers 'as to where contraband' or other evidence 'may be kept.'") (quoting *United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997)).

As noted previously, the information from the application for the first GPS warrant was sufficient to establish probable cause to believe Defendant was dealing drugs.  Substantially the same information was included in the application for the warrant to search his apartment.  The real question here was whether the application established the required nexus to Defendant's apartment.  The court agrees with the government's arguments at the Hearing concerning the affidavit containing newly obtained information flowing from the original GPS warrant.  After installing the GPS unit on Moss' Taurus on December 4, 2019, Moss "made over 40 stops at both residences and parking lots.  Most of the stops lasted two to four minutes, which is consistent with

---

[7] Following this statement, the government proceeds to list off 15 statements within the affidavit that provide a nexus between Moss' drug crimes and his residence.  (Doc. 72 at 10-12.)

selling narcotics." (Doc. 65-1 at 8.)  Specifically, the GPS showed that Moss visited Robinson's residence six times, Shaw's residence four times, and April Harding's—previously arrested for possession of crack cocaine—residence three times.  Additionally, on December 13, 2019, officers executed a second narcotics search warrant at Shaw's residence, and once again located cocaine, crack cocaine, and over $5,000 in U.S. currency.  During questioning related to that search, Shaw stated that Moss drove to his residence the previous day—which GPS information corroborated—to give him cocaine to sell in order to pay his debts owed to Moss.

Finally, the affidavit in support of this search warrant indicated that the affiant office and another officer analyzed the data obtained from the GPS tracker on Defendant's car for any indication that Defendant was using a stash house or other location to store drugs.  The affidavit indicated that if Defendant was using a stash house to store drugs, the affiant would have expected to see the GPS data indicating stops at such a location prior to Defendant delivering drugs to other persons.  Accordingly, the affiant informed the magistrate judge that after reviewing all the GPS data and other evidence, it was his belief that the suspected drugs were likely stored at Defendant's apartment.

Based on the foregoing, the court finds there was a sufficient nexus between the suspected criminal activity and the place to be searched, and, further, that the magistrate had a substantial basis for concluding probable cause existed to issue the search warrant.  Accordingly, the motion to suppress is denied.

### III.    Conclusion

Based on the foregoing, as well as reasons stated on the record during the Hearing, Moss' motions to suppress (Doc. 51, 64, 65) are DENIED and (Doc. 63) is DENIED AS MOOT.  As

noted above, Moss' pro se objection filed after the Hearing is OVERRULED, leaving his last motion to suppress (Doc. 66) WITHDRAWN as represented at the Hearing.

IT IS SO ORDERED this 17th day of November, 2021.


_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

11