IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                              Case No. 20-10038-01-JWB

ROGER MOSS,

Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion and supplemental motion to vacate

sentence pursuant to 28 U.S.C. § 2255 and motion for an evidentiary hearing.  (Docs. 190, 194,

210.)  The motions have been fully briefed and are ripe for decision.  (Docs. 198, 207, 211, 212.)

The motions are DENIED for the reasons stated herein.

## I.      Facts and Procedural History

Defendant Roger Moss ("Defendant" or "Petitioner") was charged in a June 16, 2020,

indictment with one count of possession with intent to distribute methamphetamine, 21 U.S.C. §

841(a)(1) and (b)(1)(A); one count of possession with intent to distribute heroin, 21 U.S.C. §

841(a)(1) and (b)(1)(C); one count of possession with intent to distribute cocaine, 21 U.S.C. §

841(a)(1) and (b)(1)(C); one count of possession of a firearm in relation to a drug trafficking crime,

18 U.S.C. § 924(c); and one count of prohibited person in possession of a firearm, 18 U.S.C. §

922(g)[1].  (Doc. 1.)  Pursuant to the indictment and arrest warrant, Petitioner was arrested on June

24, 2020.  (Doc. 4.)  On June 29, 2020, Petitioner was granted release pending trial.  (Doc. 10.)

In August 2021, Petitioner filed several motions to suppress, seeking to suppress evidence

seized from the traffic stop, the search of his apartment, and the GPS warrant.  (Docs. 51, 63, 64,

---

[1] The court will discuss the particular language in the indictment and the statutory subsection cited, *infra*.

65, 66.)  Defendant also sought a *Franks* hearing on the basis that the affidavit in support of the search warrant contained material omissions.  (Doc. 99.)  The court held a hearing on the motions to suppress but denied the requested *Franks* hearing.  Ultimately, the motions to suppress were denied.[2]

A jury trial was held in December 2021.  The Tenth Circuit's decision in *United States v. Moss*, No. 22-3101, 2024 WL 4541738, at *1 (10th Cir. Oct. 22, 2024), sets forth the evidence at trial pertaining to the items seized during the search of Defendant's residence as follows:

> Throughout Defendant's residence, officers recovered a total of more than 300 grams of cocaine, more than 600 grams of methamphetamine in crystal and pill form, more than 58 grams of heroin, and more than a kilogram of marijuana. Officers also located multiple forms of drug paraphernalia including crack pipes, brillo, (used inside a crack pipe as a screen), scales, and baggies. In Defendant's bedroom, which was otherwise "tidy," officers located, among other things, a used crack pipe and an unloaded firearm underneath the bed. In dresser drawers, officers located another used crack pipe and baggies containing cocaine and other drugs. Officers also located three loaded semiautomatic handguns in the dresser near the bed. A suit jacket pocket located in the bedroom closet contained a large quantity of methamphetamine pills. In the kitchen, officers recovered two used crack pipes in plain view on the counter. Also in the kitchen, officers found baggies of pills containing methamphetamine, other baggies containing small amounts of marijuana, and a digital scale with white residue. In the oven, officers found cooking utensils with residue indicating crack cocaine preparation. Two baggies located on top of a checkbook featuring Defendant's name and address contained pharmaceutical tablets and pills testing positive for fentanyl.

*Id.* at *4.

Notably, law enforcement seized thirteen firearms from Defendant's residence.  *Id.* at *5. There were loaded firearms in the "bedroom's dresser drawer about two feet away from the bed in close proximity to a used crack pipe as well as an assortment of drugs. Add to this $25,000 in cash located in the bedroom closet."  *Id.*  The jury also heard from James Shaw, one of Defendant's

---

[2] One motion was denied as moot as the government declined to introduce the evidence seized that was at issue. (Doc. 99 at 8.)  Another motion was withdrawn by Defendant.  (*Id*. at 1, n.1.)

buyers. Shaw testified that he purchased drugs from Defendant and that he witnessed Defendant engaging in drug transactions.

The jury heard this evidence and more for five days and deliberated and returned a verdict of guilty on all counts. The court then instructed the jury on forfeiture. The jury found that the firearms were used or involved in the crimes and that the $25,000 was proceeds of the crimes. (Doc. 121.) The court sentenced Defendant to 255 months imprisonment. Notably, in sentencing Defendant, the court found that Defendant's testimony during trial was not credible and that he deliberately lied under oath, warranting an obstruction of justice enhancement under U.S.S.G. § 3C1.1. (Doc. 135 at 1–2.) Defendant timely appealed his convictions and forfeiture. The Tenth Circuit affirmed the convictions but reversed the $25,000 forfeiture finding. (Doc. 159.) Defendant filed a petition for writ of certiorari to the United States Supreme Court which was denied on March 24, 2025. (Doc. 185.) Defendant timely filed a motion to vacate on October 28, 2025. Defendant also moved to supplement that filing on December 29, 2025.

## II.    Standard

Section 2255(a) of Title 28 of the United States Code provides in part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence." Unless the motion and the record of the case conclusively show the prisoner is entitled to no relief, the court must promptly grant a hearing. 28 U.S.C. § 2255(b). However, if it plainly appears from the motion, any attached exhibits, and the record that the moving party is not entitled to relief, the judge must dismiss the motion. Rule 4(b),

Rules Governing Section 2255 Proceedings.  *See United States v. Santiago*, No. 19-10055-JWB, 2021 WL 663201, at *3 (D. Kan. Feb. 19, 2021).

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding.'" *Lee v. United States*, 582 U.S. 357, 363 (2017) (citation omitted). "To demonstrate that counsel was constitutionally ineffective, a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." *Id*. (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984)).  A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Strickland*, 466 U.S. at 689.  To establish prejudice, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### III.    Analysis

#### A.  § 2255 Motion

Petitioner's initial § 2255 motion raises sixteen separate claims of ineffective assistance of counsel.  The court will address the arguments in turn.

*Ground One*: Failure to challenge Petitioner's arrest and evidence flowing from the arrest.

Petitioner argues that his counsel was ineffective for failing to challenge his arrest when he was two miles away from his apartment and any evidence flowing from that arrest including evidence seized during the execution of the search warrant and his statements to law enforcement. As pointed out by the government, however, defense counsel did file a motion to suppress concerning Petitioner's arrest and also challenged the search of his apartment.  (Docs. 63, 65, 99.)

4

The seizure at issue involved Petitioner's detention about one hour prior to the execution of the search warrant at his residence and two miles away from his residence. The search warrant was not based on any statements made during this seizure. However, Petitioner's key was used in order to enter the residence as opposed to breaking in. As noted in the court's order, the government represented that it "did not plan to use any evidence obtained during the seizure at trial. Specifically, the government agreed not to introduce Moss's cellphone, his statements claiming ownership of the phone, or his apartment key–the only evidence to which Moss objected." (Doc. 99 at 8.) The court further noted that the use of the key was not significant as officers could gain entry by breaking down the door and defense counsel agreed with this. (*Id*. at n. 5.) Therefore, defense counsel was not ineffective for failing to challenge Petitioner's seizure because he actually did so. Further, defense counsel was successful in his challenge as the government agreed not to use the evidence to which he objected.

Petitioner further argues that trial counsel should have argued that the detention tainted the search of his residence. As noted by the government, however, the search warrant was obtained before Petitioner's seizure. Therefore, his trial counsel was not ineffective for failing to argue that the items seized from Petitioner's residence should be suppressed on the basis that they were tainted by the seizure. Further, this court has already determined that the search warrant was lawful and that decision was affirmed on appeal. *United States v. Moss*, 2024 WL 4541738, *2–3 (10th Cir. Oct. 22, 2024); *United States v. Moss*, 2021 WL 5371491, *2–4 (D. Kan. Nov. 17, 2021). It is clear from the record that trial counsel filed multiple motions to suppress challenging the admission of evidence seized by the government. The court does not find counsel's performance to be deficient.

    ***Ground Two***. Failure to assert a challenge to the indictment regarding methamphetamine.

5

Next, Petitioner argues that trial counsel was ineffective for failing to argue that the government constructively amended the indictment to change the possession with intent to distribute charge from a mixture of methamphetamine to actual methamphetamine. Reviewing the indictment, it is clear that it charges a count of possession with intent to distribute 50 grams or more of "methamphetamine." (Doc. 1 at 1.) The indictment does not charge a "mixture and substance containing a detectable amount of methamphetamine." Moreover, the jury was instructed as to possession of methamphetamine and not a mixture. (Doc. 114.) The jury then returned a verdict finding that Petitioner had possessed more than 50 grams of methamphetamine. There was no constructive amendment to the indictment.

Petitioner also argues that the government asserted that he possessed "950" grams of methamphetamine in closing argument. The transcript reflects that government counsel made that statement during closing. (Tr. at 1154.) There was no objection to the statement; however, it was likely a misstatement that had no prejudicial effect on the trial. The evidence regarding the laboratory results was submitted to the jury and that was considered. Further, the jury made a finding of more than 50 grams, which was supported by the evidence.

Petitioner has not shown that defense counsel was ineffective for challenging a constructive amendment to the indictment as no such amendment occurred.

***Ground Three***. Defense counsel failed to challenge a constructive amendment to the indictment as to Count 5.

Petitioner further asserts that the government amended the § 922(g) charge in the indictment to a user in possession of a firearm in violation of § 922(g)(3) but the indictment originally charged a violation of possession of a firearm by a felon in violation of § 922(g)(1).

6

Petitioner asserts that this was a violation of his Fifth and Sixth Amendments because he did not have notice of the charges against him.

Reviewing the indictment, Count 5 contained a heading which stated "18 U.S.C. § 922(g)(1)(Possession of a firearm by a prohibited person)." (Doc. 1 at 3.)  The text of the charge, however, stated that Defendant knowingly possessed firearms while "knowing that he was an unlawful user of a controlled substance as defined in Title 21, United States Code, Section 802." (*Id.*)  On the day of trial, the court recognized the error in the indictment and asked defense counsel what charge he was prepared to defend.  Defense counsel stated that he had prepared for trial to defend against a charge of "possession of a prohibited person based on being an unlawful user of a controlled substance."  (Tr. at 4.)  The court recognized that under Federal Rule of Criminal Procedure 7(c)(2), an error in a citation is not grounds to dismiss an indictment or to reverse a conviction unless Defendant was misled and prejudiced.  Here, although there was a mistake as to the subsection of § 922(g) in the heading of the charge, the facts set forth in the charge clearly state that it was for being an unlawful user in possession of a firearm.  Therefore, defense counsel was not ineffective for failing to seek dismissal based on a constructive amendment.  The text in the charge clearly advised Defendant of the charge against him and the typographical error did not prejudice him as his counsel was prepared to defend against the charge.  There is no merit to Defendant's contention that he was unaware of the basis of the charge in Count 5.

***Ground Four***.  Defense counsel was ineffective for failing to challenge the GPS search warrant.

Petitioner asserts that defense counsel was ineffective because the GPS search warrant did not establish probable cause and James Shaw's statements were not corroborated and he was not a reliable witness.  (Doc. 190-1 at 6–7.)  Petitioner further asserts that the issuance of the first

7

warrant tainted the extension that was granted in the GPS extension warrant. (Doc. 207 at 6–7.) As noted by the government, defense counsel did argue that the GPS search warrant lacked probable cause. He also argued that Shaw did not provide any information that would corroborate his story and there was no basis to determine his reliability. (Doc. 64 at 3.) This court found that there was probable cause for the GPS warrant. The Tenth Circuit affirmed. Petitioner's arguments lack merit as defense counsel did challenge the GPS warrant and also raised the issue of Shaw's reliability and lack of corroboration.[3]

*Ground Five*. Defense counsel was ineffective for failing to request a lesser included offense of simple possession.

Petitioner argues that there was evidence to support that his possession of the controlled substances was for his own use and that his counsel should have requested an instruction on the lesser included offense of simple possession. As noted by the government, however, Petitioner's defense was that someone else put the drugs in his house and they were not his. Therefore, defense counsel was not ineffective for failing to request the instruction. It was not supported by the evidence. Moreover, the court would not have given such an instruction in any event; given the extraordinary quantities of drugs found in Defendant's apartment, the suggestion that these were personal-use quantities is utterly preposterous.

*Ground Six*. Defense counsel failed to argue that there was a lack of connection between the methamphetamine and Defendant due to joint occupancy of the apartment.

---

[3] The government initially construed Petitioner as potentially arguing that defense counsel should have moved to suppress the second GPS warrant. The government argued that this claim should be denied as Petitioner has failed to provide the court with the warrant. (Doc. 198 at 18.) In reply, Petitioner argued that the government misconstrued his argument and that he was arguing that the first warrant lacked probable cause and that the issuance of that warrant tainted the issuance of the second warrant. (Doc. 207 at 6–7.) Petitioner, however, does not appear to assert that defense counsel should have made another argument other than it was tainted by the issuance of the first warrant. Because there was probable cause to issue the first warrant, the second warrant was not tainted by its issuance.

Petitioner asserts that defense counsel failed to argue that Petitioner did not have possession of the methamphetamine because it was found in a location that was jointly occupied. Petitioner's argument is completely without merit. Defense counsel raised this issue and sought and received an instruction on joint occupancy. (Doc. 114 at 21.) As noted by the government, the jury was not persuaded.

***Ground Seven***. Defense counsel failed to challenge the § 924(c) charge.

Petitioner argues that defense counsel was ineffective because he failed to challenge the § 924(c) charge on the basis that there was no evidence of actual distribution or possession with intent to distribute. Again, Petitioner's arguments are contradicted by the record as defense counsel did raise these arguments to the jury. This claim is also meritless.

***Ground Eight***. Defense counsel failed to object to the government suborning perjury through the testimony of James Shaw.

Petitioner argues that the government suborned false testimony from James Shaw. The court has reviewed Petitioner's motion and quotes from the trial record. At no point does Petitioner offer any evidence that Mr. Shaw was lying or that the government knew that he was lying. Petitioner rambles on about the statements contained in the affidavit, which are separate from trial testimony and therefore the court need not address those. Petitioner then quotes a discussion of Mr. Shaw's visits to Defendant's residence on 21st Street. (Doc. 190 at 32–33.) Petitioner takes issue with Mr. Shaw's statement that he was "buzzed" upstairs when Petitioner could not answer the door. Petitioner asserts that this statement is false because he did not have a door with a buzzer. Petitioner cites to other trial testimony and exhibits that would show that there was no door buzzer. The testimony at issue, however, clearly states that Mr. Shaw was either buzzed in or the door was open. (Doc. 190 at 34; Tr. at 785.) To the extent that there is not a buzzer on the door, Mr. Shaw's

9

testimony was not false but rather a mis-recollection and he clarified that he was either buzzed in or the door was open. Therefore, there was no basis for defense counsel to believe that the government had suborned perjury.

Moreover, as reflected in the trial transcript, defense counsel vigorously cross examined Mr. Shaw. The court finds that defense counsel's conduct was objectively reasonable.

*Ground Nine*. Defense counsel failed to object to prosecutorial misconduct.

In ground nine, Petitioner argues that defense counsel was ineffective for failing to object to government counsel's use of the phrase "drug proceeds," failing to correct Mr. Shaw's false testimony, suggesting Petitioner was a liar, and a reference to 950 grams of methamphetamine in closing. Reviewing the record, Petitioner's citations do not support his assertion that government counsel used the phrase "drug proceeds" in the presence of the jury. Rather, government counsel questioned witnesses regarding the money/currency/funds seized. Such questioning was entirely proper.

With respect to Mr. Shaw, Petitioner contends that government counsel failed to correct Mr. Shaw's testimony when he testified that he was not testifying solely for the purpose of receiving a sentence reduction. (Doc. 190-1 at 17.) Petitioner asserts that counsel should have corrected his testimony but fails to identify how his response to the question "you're here today hoping to reduce your sentence" was false. (*Id.*) Next, Petitioner argues that defense counsel should have objected to government counsel's closing argument regarding Petitioner's testimony during trial. Although Petitioner asserts government counsel implied he was a "liar," government counsel did not call him a liar but stated the following:

> What I would suggest is just remember how difficult it was, almost impossible to get a straight answer out of him through most of his testimony. Is that somebody whose testimony you can rely upon in deciding the facts of this case? Look at the

10

elements of the instructions. Look at the evidence in this case that's been presented to you.

(Tr. at 1200.)

Contrary to Petitioner's assertion, defense counsel's decision to refrain from objecting was entirely reasonable.  This statement in closing argument is appropriate and it is also an accurate statement regarding Petitioner's testimony.

Finally, Petitioner asserts that defense counsel was ineffective for failing to object to government counsel's statement during closing that Petitioner had 950 grams of methamphetamine.  The court has already addressed this *supra*.  While this statement was inaccurate, it did not prejudice the proceedings.  The jury was presented with evidence of the weights of the methamphetamine during trial.  The jury was also instructed that attorneys' statements are not evidence.  The court does not find that defense counsel's performance was deficient here.  And, in any event, he has not established prejudice.

***Ground Ten***.  Defense counsel failed to argue that the application of U.S.S.G. § 3C1.1 was a violation of Petitioner's First Amendment rights.

The government sought an enhancement under § 3C1.1 on the basis that Defendant's Facebook post before trial threatened or intimidated a witness and for lying on the witness stand. (Doc. 131 ¶ 210.)  Ground ten attacks defense counsel's conduct regarding the Facebook post. Petitioner argues that defense counsel was ineffective for failing to argue that the sentencing enhancement under § 3C1.1 violated his rights to protected speech because his Facebook post was not a threat.  As noted by the government, defense counsel did argue that a sentencing enhancement was not intended to punish a criminal defendant for exercising his constitutional right to testify at trial and also argued that the image posted by Petitioner was a publicly accessible image and not posted for the purpose of intimidating the witness.  (*Id*. at 49–50.)  Clearly, defense counsel

11

vigorously objected to the sentencing enhancement and made arguments in support of his objection. (Docs. 131 at ¶¶ 250–51; 151 at 40–41.)  Petitioner's belief that defense counsel should have made a different argument does not amount to ineffective assistance of counsel.  Strategic or tactical decisions on the part of counsel are presumed correct, unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy." *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quotation and citations omitted).  Here, counsel made a strategic decision on the objections based on his experience and the record. Moreover, defense counsel objected on the basis that Petitioner's conduct did not amount to a threat.  Therefore, the court finds that defense counsel's performance with respect to these issues was not deficient.

*Ground Eleven*.  Defense counsel failed to object to the application of U.S.S.G. § 3C1.1 based on perjury.

Petitioner argues that defense counsel was ineffective for failing to object to the enhancement because the government "did not specify which portion of Mr. Moss' testimony was false." (Doc. 190 at 42.)  Petitioner's claim is completely without merit.  Defense counsel objected to the enhancement and argued against its application.  Further, it was clear what testimony the government believed was false as set forth in the presentence report and found by the court on the record.  (Docs. 131 ¶¶ 219–249; 151 at 55–57.)  Petitioner's claim on this count is denied and not supported by the record.

*Ground Twelve*.  Defense counsel failed to argue for the safety valve reduction.

Petitioner argues that defense counsel was ineffective for failing to argue for the application of the safety valve reduction.  As discussed by the government, Petitioner did not qualify for the reduction. (Doc. 198 at 28.)  Therefore, this claim is without merit.

***Ground Thirteen***.  Defense counsel failed to raise a *Brady* claim as to alleged missing GPS data.

Petitioner asserts that the government withheld GPS data from the car stop of December 18, 2019, which would have "been proof positive that Mr. Moss did stop at the stop sign."  (Doc. 190-1 at 26.)  In support of his motion that the data was not disclosed, he cites to the government's statement in a January 14, 2021, filing that states the following:

> As for the lack of GPS data for 12/18/2019, the government advises the Court and defense counsel that prior to reading the defendant's motion, the government was not aware that any data was missing. The government contacted the appropriate officers. The officers reported that they do not have data for that date. The officers contacted the company that provides the data to find out why it was not provided along with the other GPS data. One officer advised that sometime during the monitoring period the GPS device was removed in order to perform maintenance on the device. The officer is attempting to identify that date(s) for maintenance. When that information is provided, or if it cannot be provided to counsel, the government will convey this information to defense counsel.

(Doc. 37 at 9.)

Clearly, the government's response contemplated obtaining the missing data from the company that maintained it.  The government states in response that the data was provided to defense counsel on June 23, 2021.  (Doc. 198 at 29.)  In reply, Petitioner asserts that the government lied and committed fraud in the response because it contradicts the statement previously made on January 14, 2021. (Doc. 207 at 10.)  Nothing about the government's response contradicts the statement made in January 2021.  Rather, the response in January 2021 states that the government was not aware of missing data and that the government would contact the company to obtain the data and then provide it to defense counsel.  That data was then provided at a later date.  Petitioner's sole basis for arguing that he did not have the data was government counsel's statement in January 2021, which clearly stated that the data would be provided to defense counsel.

13

Therefore, defense counsel was not ineffective for failing to raise a *Brady* violation as the information was provided.

In any event, there is no prejudice to Petitioner from data pertaining to the stop as the government did not introduce evidence from the stop and the motion to suppress the stop was withdrawn.

***Ground Fourteen***.  Defense counsel failed to argue that the investigation was federal in character and failed to object to the warrants on the basis of Federal Rule of Criminal Procedure 41 because the officer obtained the second warrant from a different judge.

As noted by the government, defense counsel did challenge the second GPS warrant on the basis that it was obtained from a different judge.  (Docs. 51; 99 at 7–8.)  Further, contrary to Petitioner's belief, the investigation was done by state officials and they were not required to comply with Rule 41.  These assertions lack merit and Petitioner has failed to show that his counsel's performance fell below an objective standard of reasonableness.

***Ground Fifteen***.  Defense counsel failed to raise a constitutional challenge to the jury pool because the panel of jurors were all white.

Petitioner asserts that defense counsel was ineffective for failing to raise a challenge to the composition of jurors in that none of the potential jurors were black and that they were all white. Petitioner is black and asserts that his constitutional rights were violated for not having a jury composition that reflected the community.  According to Petitioner, he raised this issue with his defense counsel who did not make an objection.  Petitioner contends that the 2020 census for Wichita reported that there are 8.9% blacks in the community.  This fact is not relevant inasmuch as the jury pool for Defendant's trial was not limited to Wichita; the jury pool for trials in this division are drawn from multiple counties in south-central Kansas.  Accordingly, Petitioner's

assertion that "African Americans have been under-represented in the jury selection process due to systematic exclusion" is conclusory. (Doc. 190-1 at 33.)

In response, the government asserts that Petitioner does not have a constitutional right to a jury composed in whole or in part of individuals of his race and that he has failed to establish a violation of the fair cross section requirement. The court agrees.

"To establish a violation of the fair cross section requirement, [Petitioner] must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to *systematic* exclusion of the group in the jury-selection process." *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006) (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). "The Fifth Amendment requires a substantially similar showing, that the district's system resulted in substantial under-representation of a distinct group over a substantial period of time." *Id.* Here, Petitioner has not put forth facts to establish the second and third elements. Rather, Petitioner merely makes conclusory statements regarding these elements. Therefore, he has not shown that there was a violation of his Fifth and Sixth Amendment rights on the basis that there were no black jurors in the panel. His counsel was not ineffective for failing to make an objection regarding the panel.

***Ground Sixteen***. Petitioner asserts that the cumulative errors from his counsel prejudiced him.

Finally, Petitioner asserts that he is entitled to relief from the cumulative errors. "A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be

15

determined to be harmless." *Cargle v. Mullin*, 317 F.3d 1196, 1206 (quoting *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002)).  Because there was no finding of error by the court, there is no need for a cumulative error analysis.  *Smith v. Jones*, 226 F. App'x 814, 816 (10th Cir. 2007).

### B.  Supplemental § 2255 Motion

Defendant's supplemental motion raises an additional claim regarding the § 922(g)(3) charge and the instructions.  The supplement is timely as it was filed prior to the one year statute of limitations running.   Therefore, the court will address the additional claim raised.

***Ground Seventeen***.   Defense counsel failed to object to the § 922(g)(3) charge, the instructions, and the jury question.

Petitioner asserts that defense counsel was ineffective for failing to argue that § 922(g)(3) was unconstitutional, "because it was inconsistent with historical tradition."  (Doc. 212 at 1.) Petitioner then cites to *United State v. Daniel*, 124 F.4th 967 (5th Cir. 2025).   Petitioner's arguments rely on the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), which was issued after the trial in this case.  Defense counsel's strategic decision not to challenge a statute which had been held constitutional by courts in this circuit and others prior to *Bruen* was not objectively unreasonable.   Defense counsel is not required to challenge statutes that are presumed constitutional especially in light of the state of the law at the time.

Petitioner also asserts that defense counsel was ineffective for failing to object, or expound, or challenge the question from the jury and/or the judge's answer.  (Doc. 194 at 2.)   During deliberation, the jury submitted a question about the definition of an "unlawful user of a controlled substance." (Doc. 115.)  The jury questioned whether that definition was in Title 21 U.S.C. § 802.

After receiving the question, the court met with the attorneys to discuss an appropriate answer. The court ultimately answered the question by stating "Title 21 U.S.C. Section 802 defines, among other terms, a 'controlled substance,' not an 'unlawful user of a controlled substance.' The definition of an unlawful user of a controlled substance is as provided in instruction 15. You should give the words used in that definition their plain and ordinary meaning." (*Id*. at 3.)

Although Petitioner asserts that defense counsel should have objected, Petitioner fails to show that the court's response was an incorrect statement of the law. It was not. Therefore, defense counsel's conduct was objectively reasonable.

Finally, Petitioner asserts that there was some defect in the instruction pertaining to the § 924(c) count. Petitioner objects to the language in Instruction No. 14 which told the jury to consider various factors to determine whether the possession of a firearm furthered a drug trafficking crime. (Doc. 114 at 16–17.) Specifically, the instruction told jurors to consider "the status of the possession (legitimate or illegal)." (*Id.* at 17.) Petitioner objects to this language and asserts that the jury finding on his § 922(g)(3) count resulted in a guilty finding on the § 924(c) count. The court highly doubts that this language resulted in his conviction on the § 924(c) count. As noted by the Tenth Circuit, this is a case where Defendant was "facing overwhelming evidence of his guilt." *Moss*, 2024 WL 4541738, * 6. In any event, that language was taken directly from the Tenth Circuit Pattern Jury Instruction 2.45.1 and is the law in this circuit. Therefore, defense counsel acted entirely reasonably by not objecting to the language.

The court finds that the allegations in the petition and supplemental petition fail to show that defense counsel's representation fell below an objective standard of reasonableness and fail to show that Petitioner suffered any prejudice as a result.

## C.  Evidentiary Hearing

The court must "grant a prompt hearing" unless "the [§ 2255] motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]"  28 U.S.C. § 2255(b).  As the Tenth Circuit has explained, "[t]he decision not to hold an evidentiary hearing is essentially the equivalent of a dismissal for a failure to state a claim or a summary judgment, because the district court has concluded that the record does not entitle the prisoner to relief[.]"  *United States v. Ciocchetti*, 480 F. App'x 912, 914 (10th Cir. 2012) (quoting *In re Lindsey*, 582 F.3d 1173, 1175 (10th Cir. 2009)).  This is because "either the prisoner has failed to allege facts on which relief could be predicated, or the record conclusively contradicts the prisoner's allegations." *Id*.

Petitioner moves for an evidentiary hearing on the basis that his allegations entitle him to relief.  (Doc. 210.)  However, as shown throughout this order, Petitioner's claims of ineffective assistance of counsel are not supported because the record clearly contradicts his factual allegations.  Moreover, it is clear that the files and records in this case conclusively show that Petitioner is not entitled to relief.  Therefore, he is not entitled to an evidentiary hearing.

## IV.     Conclusion

Petitioner's motion to vacate sentence (Doc. 190) and supplemental motion to vacate (Doc. 194) are DENIED.  Petitioner's motion for an evidentiary hearing (Doc. 210) is DENIED.

An appeal from a final order on a § 2255 motion may not be taken absent a certificate of appealability, which may issue only if a petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The court concludes Petitioner has failed to make such a showing and accordingly a certificate of appealability is DENIED.

IT IS SO ORDERED.  Dated this 9th day of June, 2026.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE